Anthony GRANDISON

v.

**WARDEN, MARYLAND HOUSE OF CORRECTION.**

**Civ. No. HM75–1724.**

United States District Court,
D. Maryland.

Dec. 2, 1976.

Peter S. Smith, Baltimore, Md., for petitioner.

Francis B. Burch, Atty. Gen., of Maryland, and John P. Stafford, Jr., Asst. Atty. Gen., Baltimore, Md., for respondent.

## MEMORANDUM

HERBERT F. MURRAY, District Judge.

### I. *History of the Case*

Petitioner, Anthony Grandison, is before this court seeking enforcement of this court's order issued on June 9, 1976. The basic issue is the meaning of "expungement." In a Memorandum and Order dated June 9, 1976, this court held that petitioner was entitled to the issuance of a writ of habeas corpus under the holdings of *Long v. Robinson*, 316 F.Supp. 22 (D.Md.1970), *aff'd* 436 F.2d 1116 (4th Cir. 1971) and *Woodall v. Pettibone*, 465 F.2d 49 (4th Cir. 1972), *cert. denied*, 413 U.S. 922, 93 S.Ct. 3054, 37 L.Ed.2d 1044 (1972). It was held in *Long v. Robinson, supra*, that all persons under the age of eighteen were entitled first to be subject to the jurisdiction of the juvenile court system before being tried by an adult court. Petitioner Grandison had shown that he was a juvenile when he was arrested and tried and that he was not first subject to the jurisdiction of the juvenile court system. Thus, a *nunc pro tunc* waiver hearing was held before this court on April 19, 1976, to give the State the opportunity to establish that the Maryland Juvenile Court Judge would have, because of the facts and circumstances, waived jurisdiction to an adult court.

Upon hearing the evidence presented at the waiver hearing, the court concluded that the juvenile court would not have waived jurisdiction over petitioner. The court then ordered:

(1) that petitioner's application for a writ of habeas corpus be granted;

(2) that petitioner's convictions of February 24, 1970 be vacated and declared null and void; and

(3) that petitioner's convictions of February 24, 1970 be expunged from his record.

On June 21, 1976, the State moved for relief from the court's order, contending that this court should hold its order *sub curia* pending a state court determination of the validity of petitioner's 1970 convictions. In a Memorandum and Order of July 12, 1976, this court denied the State's motion for relief. The State did not appeal this court's order.

On August 23, 1976, the court received a letter from petitioner in which he stated that the court's order was not being carried out. He further stated that the Records Supervisor of the Maryland House of Correction had been ordered not to change his record until the outcome of his state appeal. In light of this letter, the court wrote to Assistant Attorney General John P. Stafford, Jr. on September 2, 1976, and requested a report detailing the steps being taken to comply with the court's order. The court received a letter from Mr. Stafford dated September 3, 1976, in which he enclosed a copy of a letter he sent to the Maryland House of Correction and stated:

I feel sure that upon receipt of my letter the Record Supervisor, Ms. Linda Carrick, will make the proper corrections on Mr. Grandison's confinement records, and that copies of your Order will be used as authority for vacating the sentence imposed upon Mr. Grandison on February 24, 1970.

The enclosed letter from Mr. Stafford to Ms. Carrick contained the following:

The record of Anthony Grandison should be corrected to show that the U.S. District Court for the District of Maryland has declared Mr. Grandison's conviction of February 24, 1970, null and void and has vacated the sentence imposed as a result of that conviction. The enclosures [a copy of this court's orders of June 9, 1976, and July 12, 1976] should be made a part of Mr. Grandison's base file and your records should show the vacation of the

sentence in the above case, pursuant to the Order of the U.S. District Court.

On September 14, 1976, the court received another letter from petitioner in which he contended that the steps being taken by the State to expunge his records were not sufficient because the convictions would still be evident to anyone looking at his record. The record would indicate only that this court ordered the convictions null and void and would still refer to those convictions. Petitioner complained in particular of the effect his void convictions might have on a parole decision in another sentence he is serving.

The court arranged a meeting with counsel for petitioner, Peter Smith, and Mr. Stafford. This meeting was held on October 4, 1976, at which time the court asked the parties to submit briefs on the question of compliance with the court's order and set a hearing for October 29, 1976. A hearing was held on that date, and it is the purpose of this Memorandum to rule on the questions presented.

## II. *Contentions of the State*

The State contends, first, that the Warden of the Maryland House of Correction has complied with this court's order to the best of his ability. The Warden is in control of petitioner's base file.[1] The State has interpreted the court's order to mean that this court's order of June 9, 1976 and its order of July 12, 1976 be made a part of petitioner's base file and that a notation be made in the base file that petitioner's convictions were declared null and void and his sentence vacated.

The State also points to Article 27 of the Maryland Code, Section 691, which provides:

(a) . . . Promptly after the sentencing of any person to the jurisdiction of the Department of Correction, it is the duty of the Department to assemble the necessary information and prepare an adequate case record of each inmate which shall include a description of the offender, photograph or photographs, his family history, previous record, a summary of the facts of the case for which he is serving sentence and the results of his physical, mental and educational examination, which shall be conducted as soon after sentencing to the jurisdiction of the Department as feasible. From the information so assembled, each inmate shall be classified and assigned to such available treatment, training, or employment as may be deemed appropriate. It is the further *duty of the warden* or superintendent of the respective institutions, under regulations established by the Department of Correction, *to keep and preserve adequate records of the conduct, effort, and progress of each inmate during confinement*, and copies of the case and institutional records, or summaries thereof, shall be presented to the parole authority by the time each such inmate becomes eligible for parole and at other times when requested. (emphasis supplied)

The State contends that the Warden is not given authority to destroy any records by the above provision and, therefore, cannot do so without violating Maryland law. The State further asks that a more detailed order be issued if the Warden is not in compliance with the court's order.

Second, the State contends that the word "expungement" has many meanings, such as "destroy" and "erase", and that, since there is no standard federal definition of expungement, the court must specify in its order what is meant by the term.

Third, the State argues that this court cannot order expungement in a habeas corpus proceeding without a motion having been filed requesting such relief and including as parties to the action individuals who would be affected by the court order. In particular, the State contends that the Chief of the Baltimore City Police, the FBI, and the Clerk of the Criminal Court of

1. Those records in the custody of the police and the Clerk of the Criminal Court of Baltimore will be discussed below. It should be noted that petitioner's base file, the police records, and the court records are all at issue herein.

Baltimore should have been parties to the suit if the expungement order is to apply to them.

## III. *Petitioner's Contentions*

Petitioner first contends that the State has not carried out this court's expungement order. Petitioner refers to the Maryland expungement statute, Article 27 of the Maryland Code, Section 735(c), which provides:

*Expungement*, with respect to court records or police records, means the effective removal of these records from public inspection,

(1) By obliteration; or

(2) By removal to a separate secure area to which the public and other persons having no legitimate reason for being there are denied access; or

(3) If effective access to a record can be obtained only by reference to other records, by the expungement of the other records, or the part of them providing the access.

Petitioner contends that expungement has the meaning given it by the Maryland statute and that the mere addition of information to a record cannot achieve the policy and purpose of expungement. Petitioner states:

The subsequent discovery that the conviction was set aside could not erase the prior knowledge of it. Especially when a conviction is declared void, it is the purpose of expungement to prevent persons from ever obtaining the knowledge that petitioner was convicted at all. As long as any references to void convictions remain in petitioner's base file, the remedy of expungement is no remedy at all. (Memorandum at page 6)

Petitioner second contends that the state should be precluded from contesting this court's expungement order since it did not appeal when the order was issued. Petitioner states that defiance of a court order is an inappropriate method of resolving conflicts surrounding judgments.

Third, petitioner argues that there is no merit to the State's contention that only the Warden may be ordered to expunge records. Petitioner states:

The Warden, Clerk of the Criminal Court of Baltimore, and the Police Commissioner have no individual and personal interest in the retention and maintenance of petitioner's records of conviction. The interest of these three individuals merge into one distinct and identifiable interest, that of the State in protecting itself from criminal behavior. (Memorandum at page 9)

The Warden, petitioner contends, is named as respondent in this case only because he is the official who maintains petitioner in actual physical custody. In this capacity, the Warden is no more than a figurehead who represents the interests of the State. Thus, petitioner contends, there is no need to bring a separate action against the police commissioner and the clerk of the criminal court.

Petitioner also refers to the Maryland expungement statute which sets forth a simple procedure for the expungement of records. Under that statute, the State's Attorney is a party to the action and not the Clerk of the Criminal Court or the police commissioner. Petitioner contends that this statute reflects a legislative determination by the State that the interest in retention of police and court records is one which runs to the people of the State and not to the custodians of the records in their capacities as such.

## IV. *Conclusions of the Court*

■ The court concludes that the State has not complied with the order of the court and that the State should advise the Warden, the Police Commissioner and the Clerk of the Criminal Court of Baltimore to expunge the records of petitioner's 1970 conviction through obliteration, removal to a separate and secure area to which the public and other persons are denied access, sealing the records, or returning the records to petitioner.

Turning first to the question of the records in the custody of the Warden, the

court does not consider it necessary to issue a more detailed order. The meaning of expungement, although subject to some variation, has never been interpreted to mean simply placing a notation on the record that a court has ordered the conviction vacated. Such an interpretation would defeat the entire purpose of the expungement remedy because anyone looking at the record would be made aware immediately of the conviction. The conviction would not be "null and void" if it were so readily accessible. Clearly, a notation that the conviction has been vacated would not be effective to erase the impact of the conviction itself. Therefore, the Warden must expunge petitioner's record so that no trace of his void convictions remains. If the Warden is still uncertain as to the meaning of expungement, the court suggests that he be guided by the meaning given the term in Section 735(c) of Article 27 of the Maryland Code, *supra.*

■ Nor will this court's order force the Warden to violate Maryland law. Section 691 of Article 27 of the Maryland Code simply provides that the Warden is to "keep and preserve adequate records of the *conduct, effort, and progress of each inmate during confinement . . . .*" (emphasis supplied) The court's order has nothing to do with petitioner's conduct during confinement but relates to the validity of that confinement itself.

■ The court further holds that it has the authority to order the expungement of petitioner's records against all persons who maintain custody of such records. The Warden is named as respondent solely because he is petitioner's custodian. He is simply a figurehead who represents the interests of the State. In *West v. State of Louisiana,* 478 F.2d 1026 (5th Cir. 1973), the court held that petitioner's habeas corpus petition should not be dismissed although he named the state as respondent rather than the warden. The court reasoned:

> The purposes of the statutory requirement are .equally well served whether the immediate custodian is named as respon-

dent or is identified elsewhere in the petition. Some courts have held it necessary to name the immediate custodian as respondent on the ground that it is he who must certify the cause of detention and respond to the court's order. . . . In fact, however, the role of the warden in habeas corpus litigation is limited to performing the perfunctory duties of producing the prisoner for a hearing or of releasing the prisoner should the petition be granted. Indeed, the response to the petition is customarily prepared by the state's attorney. . . . The warden had no interest in the proceeding independent of that of the State. (478 F.2d at 1030)

■ The role of a federal court in habeas corpus cases would be undermined if the court, in providing suitable remedies, were restricted to those acts which only the Warden could carry out. The interest at stake is that of the State and not of the individual Warden; consequently, it is the responsibility of the State to see that this court's order is carried out by all of its agencies.

It should now be clear to the State, if it was not so previously, that the Warden, the Chief of the Baltimore City Police, and the Clerk of the Criminal Court of Baltimore should expunge petitioner's 1970 convictions from their records, as the term "expunge" has been defined in this Memorandum. Simply placing a notation by petitioner's convictions that this court has declared the convictions null and void is not sufficient.

As stated above, the court will not issue a second order incorporating the holdings of this opinion. The order of June 9, 1976 still stands and should be complied with by the State forthwith.

. It is hereby directed that the Clerk of the Court mail copies of this Memorandum to counsel for petitioner and to the Attorney General of Maryland.